FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

2021 APR 29 AM 11:58

OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

ABRAM SOLLMAN; on behalf of himself,

PLAINTIFF,

VS.

JEFF DAVIS, in his individual capacity as Sheriff of Sarpy County, Nebraska; RN CHELSY, in her individual capacity as Director of Medical Department at the Sarpy County Jail; SARPY COUNTY, NEBRASKA; DR. TAO, medical provider at the University of Nebraska Medical Center; and DOES 1 to 20, inclusive,

DEFENDANTS.

Civil Action No. 8:21cv177

COMPLAINT AND JURY DEMAND

(All Defendants Are Sued In Their Individual Capacities)

RECEIVED
APR 29 2021
CLERK
U.S. DISTRICT COURT

Abram Sollman, Plaintiff, alleges:

PRELIMINARY STATEMENT

This is a civil rights action arising out of Plaintiff's constitutional rights within the Sarpy County Jail. Plaintiff brings this case for violation of his rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. At issue are the policies, practices, procedures, and customs of the Sarpy County Jail (hereinafter, "Jail").

Plaintiff has been subjected to deliberate indifference and negligence and gross negligence by Defendants, by failing to provide community-standard healthcare pursuant to Nebraska law.

Plaintiff seeks damages for Defendants' reckless, intentional, and conspiratorial actions that deprived him of his liberty and property interests and inflicted profound personal suffering on him that continues to this day.

Due to the motor vehicle accident which occurred on February 2, 2019, that forms the basis of this suit, Plaintiff has suffered severe cognitive-skill damage, resulting in a diagnosis of Post Traumatic Stress Disorder, and prevented him from being able to recall certain events that happened on February 2 until just recently.

FACTS APPLYING TO ALL COUNTS

1. PARTIES:

a. Plaintiff Abram Sollman is a United States citizen and resident of the State of Nebraska.

b. Defendant Jeff Davis, was at all times herein the duly elected Sheriff of Sarpy County, Nebraska. Davis is a resident of the State of Nebraska.

c. Defendant RN Chelsy, was at all times herein the Director of the Medical Department at the Jail. Chelsy is a resident of the State of Nebraska.

d. Defendant Dr. Tao, was at all times herein a medical provider at the University of Nebraska Medical Center. Dr. Tao is a resident of the State of Nebraska.

e. Defendant Sarpy County, Nebraska is a political subdivision of the State of Nebraska.

2. JURISDICTION:

a. This lawsuit involves the deprivation of Plaintiff's constitutionally guaranteed rights by Defendants under color of state law. It is brought pursuant to 42 U.S.C. 1983. Jurisddiction is proper under 28 U.S.C. 1331 and 1343. The rights sought to be enforced include Plaintiff's guaranteed rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Plaintiff requests that this Court take supplemental jurisdiction of related state claims pursuant to 28 U.S.C. 1367 (a).

b. The events at issue in this case transpired primarily, but not exclusively, in and around Sarpy County, Nebraska. Trial on this matter is proper in Omaha, Nebraska.

3. HISTORY OF THE UNDERLYING CONSTITUTIONAL VIOLATIONS:

a. Plaintiff was involved in a motor vehicle accident on February 2, 2019, on highway 370 in Sarpy County, Ne-

braska. Cassandra Clausen, the woman who died as a result of said accident, failed to yield right-of-way and maintain a proper lookout, and entered into the lane of traffic, causing Plaintiff to make contact with her vehicle, where she died at the scene.

b. Plaintiff was air-lifted by medical helicopter to the University of Nebraska Medical Center.

c. While being transported to the hospital, one of the medical techs starting kicking and punching Plaintiff, shouting obscenities at him such as, "you killed that woman you worthless piece of shit". Plaintiff intends to propound discovery requests to obtain the names of the techs that transported him on the day in question, and the video footage which will illustrate the assault inflicted on him.

d. Plaintiff remained in the hospital for 8 days as a result of the injuries he sustained in the accident, including several broken bones in his back, arm and wrist.

e. Medical staff at the hospital recommended that Plaintiff report for residential therapy sessions once he was released from the hospital on about February 10, 2019.

f. A Omaha City Police Officer offered to give

Plaintiff and his girlfriend, Melissa Velez, who was with him at the hospital, a ride to the motel that they were going to stay at until the next day, at which time Plaintiff was to check in to the residential therapy facility.

g. That same evening, a Sarpy County Deputy came to the motel and informed Plaintiff that he had a warrant in Sarpy County for DUI, and that he could come to the Jail, be processed, and post a $350.00 bond and be released.

h. When Plaintiff got to the Jail, he was informed that he had a warrant for motor vehicle homicide, a felony, and was booked into the Jail awaiting bond to be set by the Judge.

i. Percifield reported to the Judge that Plaintiff intended to flee the jurisdiction, and recommended a $1,000,000.00 bail, which the Judge set.

j. The Public Defender initially assigned to the case, told Plaintiff that there was no use in posting the bail.

k. Plaintiff remained in the Jail for several months until he was convicted and sentenced to prison.

l. When Plaintiff entered the Jail, Defendant Chelsy instructed medical staff to remove the pain patches that

were prescibed by the doctors at the hospital, and instead, gave him tylenol, which did not help with the pain whatsoever.

m. Plaintiff was initially placed in cell H3 upon admission, and remained there for several days. He was then moved upstairs to a maximum security unit and placed in solitary confinement. When he got to solitary, Defen-Chelsy ordered medical staff to confiscate his leg brace.

n. Defendant Tao informed Plaintiff that the only way that he would receive medical treatment from UNMC, was to sign a document stating that he would pay all the expenses associated with that treatment.

o. Plaintiff signed the document under duress due to the fact that he was experiencing severe pain and discomfort resulting from the accident.

p. Plaintiff was eventually allowed to have surgery, and was seen by Dr. Chase C. Woodward on at least four different occasions.

q. The first time Plaintiff seen Dr. Woodward, he evaluated him, rendered a diagnoses as to his medical condition related to the accident.

r. The second time Dr. Woodward took more x-rays and recommended that the pins be removed.

s. The third time was to have the pins removed.

t. The fourth time was for follow-up after the surgery, in which Dr. Woodward recommended physical therapy, to which Defendant Chelsy denied, on August 12, 2019.

u. Plaintiff was able to obtain certain medical documents from hospital staff. Once Chelsy got wind of it, she instructed jail staff to confiscate the files, in which they did.

v. After Chelsy denied the recommendations of Dr. Woodward for the physical therapy, she instituted her own version, and instructed Plaintiff to use dumbbells to accomplish it. However, there were no dumbbells in the Jail, so there was no way to do the therapy.

w. It is Plaintiff's contention that, due to the inordinate delay in getting him to surgery, and no means of being able to rehabilitate, resulted in permanent injury to his arm, wrist, knee and back.

COUNT I

42 U.S.C. 1983-CONSPIRACY TO VIOLATE CIVIL RIGHTS

4. Defendants, together and under the color of law, reached an agreement or understanding, engaged in a course of conduct, and otherwise conspired and colluded among and between themselves to deprive Plaintiff of his constitutional rights to be free from

further physical injury; to due process of law; equal protection of the law; cruel and unusual punishment; negligence and gross negligence.

5. Defendants deliberately and intentionally refused to ensure that Plaintiff received the community-standard of healthcare that he was entitled to by law.

6. The policies, practices, and customs established by state and federal law, were deliberately, separately and together, and purposely disregarded by the Defendants.

7. Disregard of these policies, practices, and customs were a direct and proximate cause of the violation of Plaintiff's constitutional rights and the injuries visited upon Plaintiff as set forth above.

8. Petition brought by prisoner's legal guardian against county did not set forth a cause of action for simple negligence, but set forth a cause of action under § 1983, based on the failure to provide prisoner with adequate medical care in violation of the Constitution of the United States. **Rush v. Wilder, 263 Neb. 910 (2002).**

9. The conspiracy referenced above began with the assault inflicted on Plaintiff by the med tech who transported him to the UNMC by life flight. To reiterate, the tech kicked and punched Plaintiff on the way to the hospital, yelling obscenities such as, " you killed that woman you worthless piece of shit," and others that he does not remember.

10. The disposition of the tech was relayed to hospital staff,

which in turn resulted in Plaintiff having to sign a document stating that he would pay out of his pocket for any and all treatment rendered by the hospital for his injuries.

11. The Nebraska Supreme Court held clearly that the county, of which Plaintiff was a ward of, was responsible to render adequate medical care, or be in violation of the Constitution of the United States.

12. It was Defendant Dr. Lao from UNMC, in conjunction with other medical personnel, who orchestrated the signing of the document by Plaintiff.

13. The conspiracy was furthered by the collusion that occurred between Defendant Chelsy, who was employed by a private healthcare provider, and the deputy sheriffs employed by the County.

14. Upon admission to the Jail, Chelsy instructed Jail staff to confiscate the pain patches prescribed by the UNMC, and replaced them with Tylenol.

15. Chelsy also instructed Jail staff to confiscate medical files given to Plaintiff by UNMC.

16. After initially approving a second mattress for Plaintiff, she allowed Jail staff to confiscate it, after Plaintiff threatened legal action for the manner in which Jail staff was treating him concerning his medical care.

17. Shortly after Plaintiff threatened to contact his attorney about how he was being treated, Jail staff came to his cell, searched

it, and took the second mattress.

18. Plaintiff submitted several kites to Chelsy to get the mattress back, and she refused to respond.

19. The mattress was provided to ensure that Plaintiff did not aggravate his existing injuries. Because he did not have the benefit of the mattress, he continued to suffer unnecessary pain and discomfort.

20. Defendant Chelsy was also responsible for the inordinate delay in getting Plaintiff to an outside medical provider for surgery, which, in turn, resulted in the permanent damage to his arm, wrist, and leg.

21. It was several months before Plaintiff finally got the surgery. Chelsy instructed the Jail to delay the surgery.

22. It is also very important to note that Chelsy and Defendant Davis have established a pattern of mistreatment. Eleazar Garcia was confined at the Jail two years earlier, and he experienced the identical type of treatment by these Defendants.

23. Garcia entered the Jail with a severely broken and shattered elbow that he incurred during his arrest by U.S. Marshals. The Jail, at the direction of Chelsy, instructed them to not provide Garcia adequate medical care for several months, which caused permanent damage to his arm. Garcia's doctors determined that he would have permanent nerve damage in that arm, and would have to apply for disability, because he would not be able to use that arm in the manner that he had prior to the injury, due to the inordi-

nate delay in obtaining treatment.

24. The Jail has in place policies, practices, and customs to govern the employees' actions as to how to treat prisoners with medical concerns upon entering the Jail.

25. Defendants Davis and Chelsy displayed deliberate indifference to those policies, practices, and customs, and Plaintiff's serious medical concerns, and as a direct proximate result of said disregard, resulted in Plaintiff's suffering and attendant damages.

26. Municipality or other government may be liable under § 1983 if governmental body itself subjects person to deprivation of rights or causes person to be subjected to such deprivations. **Connick v. Thompson, 131 S. Ct. 1350 (2011).**

27. Defendant Davis is a policy-maker for the County. He was just faced with a similar situation in 2017, with Garcia, concerning mistreatment of medical care. He cannot now claim qualified immunity, when he knew or should have known that the same treatment as that rendered to Garcia, would result in harm to Plaintiff two years later.

**COUNT II**

**THE DEFENDANTS ENGAGED IN NEGLIGENCE AND GROSS NEGLIGENCE**

28. To make a prima facie case of medical malpractice, a plaintiff must show (1) the applicable standard of care, (2) that the defendant(s) deviated from the standard of care, and (3) that this

deviation was the proximate cause of the plaintiff's harm. **Thone v. Regional West Medical Center, 275 Neb. 238 (2008).**

29. Defendant Tao had a duty to apply the applicable standard of care to Plaintiff when he was admitted to the UNMC for emergency treatment due to a horrific motor vehicle accident which occurred on February 1, 2019. Tao breached that duty by forcing Plaintiff to sign a document stating that he would pay out of his pocket all expenses associated with such treatment, prior to him being able to access that treatment for his injuries.

30. Malpractice is defined as a health care provider's failure to use the ordinary and reasonable care, skill, and knowledge ordinarily possessed and used like circumstances by members of his or her profession engaged in a similar practice in his or her locality or in similar localities. **Green v. Box Butte General Hosp., 284 Neb. 243 (2012).**

31. Defendant Tao failed to use the ordinary and reasonable care, skill, and knowledge ordinarily possessed and used under like circumstances by members of his profession, when he elected to charge Plaintiff medical fees up front prior to him rendering emergency care.

32. Members of Tao's profession would not have engaged in such conduct in an emergency situation where a person suffered tremendous trauma due to a horrific motor vehicle accident.

33. The standard of care under Hospital-Medical Liability Act

is found in the customary practices prevailing among reasonable and prudent physicians and must not be comprised simply because the patient cannot afford to pay. **Murray v. UNMC Physicians, 282 Neb. 260 (2011).**

34. UNMC has had in place since 2011, policies, practices, and customs to govern an employee physician's actions as it relates to a patient's ability to pay for medical treatment.

35. Defendant Tao deviated from that customary practice when he forced Plaintiff to pay up front for medical treatment. The deviation on the part of Tao is even moreso egregious as it pertains to a patient in need of emergency care.

36. The ability of a patient to pay for medical treatment should have never entered the equation, especially in an emergency situation.

37. John Doe Med Tech who transported Plaintiff by life flight to UNMC on February 1, 2019, had a duty to apply the standard of care, by ensuring that Plaintiff received a reasonable community-standard of care by conscientiously protecting the health and safety of his patient.

38. John Doe Med Tech engaged in gross negligence, which bordered on a criminal offense of first degree assault, by kicking and punching Plaintiff in his leg area and his torso, especially in light of the fact that Plaintiff received severe injuries in

those areas. Tech's actions served to further aggravate those injuries, and contributed to Plaintiff's pain and discomfort.

39. Ordinary negligence is defined as the doing of something that a reasonably careful person would not do under similar circumstances, or the failing to do something that a reasonably careful person would do under similar circumstances. **Wilke v. Woodhouse Ford, Inc., 278 Neb. 800 (2009).**

40. Defendant Chelsy instructed Jail staff to confiscate the pain patches prescribed by UNMC upon Plaintiff's admission to the Jail. Chelsy could not come forward with a justifiable explanation as to why she failed to follow the medical treatment rendered by a qualified, certified outside medical provider.

41. A reasonably cafeful person in Chelsy's position would not confiscate Plaintiff's pain patches, considering that he was involved in an horrific motor vehicle accident, and sustained multiple leg and upper body torso injuries. Chelsy was aware of Plaintiff's accident prior to him entering the Jail. She knew that he was prescribed the pain patches by an outside medical provider. Knowing the circumstances of Plaintiff's medical condition, a reasonably cafeful person would not have taken his pain patches, but instead, followed the medical treatment of a qualified, certified and bonafide profession in the field.

42. Defendant Chelsy failed to follow the medical treatment

of a certified and bonafide medical provider, that a reasonably careful person in her position, under similar circumstances, would have allowed Plaintiff to keep the patches.

43. There was no risk to the safety and security posed to the facility by allowing Plaintiff to keep his patches.Under Turner v. Safly, the U.S. Supreme Court held that if a prisoner's request does not pose a risk to the safety and good order of the institution, and does not adversely affect its resources, then such request should be accommodated.

44. As a matter of fact, allowing Plaintiff to keep the patches would save the Jail resources.

45. Additionally, Chelsy was negligent by failing to follow the outside doctor's recommendations for physical therapy. Dr. Woodward recommended physical therapy for Plaintiff after surgery, and Chelsy refused to provide the treatment. As a result of such denial, Plaintiff's injuries did not heal properly, thereby resulting in permanent damage to his leg and upper torso.

46. It is also very important to note that Chelsy instructed Jail staff to confiscate Plaintiff's leg brace. Plaintiff sustained several breaks to his knee cap resulting from the accident. Without the knee brace, his knee cap heal in a deformed manner, resulting in permanent damage to that area.

## DAMAGES APPLICABLE TO ALL COUNTS

47. As the result of the Defendants' conduct as herein before set forth, Plaintiff was damaged as follows:

a. Pain, suffering, and mental anguish, past and future.

b. Punitive damages in Defendants' individual capacities each of them in an amount to be determined at trial.

WHEREFORE, Plaintiff requests for judgment against Defendants and each of them for appropriate compensatory and punitive damages, together with interest with pre-and post-judgment, costs, and a reasonable attorneys' fee, and for such other relief as the Court deems just and equitable.

## JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL

Plaintiff demands that this case be tried to a jury in Omaha, Nebraska.

Abram Sollman

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

ABRAM SOLLMAN, Civil Action No.

Plaintiff,

vs.

JEFF DAVIS, RN CHELSY,
SARPY COUNTY, NEBRASKA,
DR. LAO, and DOES 1 to 20,
inclusive,

Defendants.

**WAIVER OF MEDICAL PANEL REVIEW**

Pursuant to Neb. Rev. Stat. 44-2840 (4), Plaintiff waives the medical panel review and elects to file his malpractice action against Defendant Dr. Tao directly into the United States District Court, and a copy of said Complaint And Jury Demand is attached hereto.

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing Waiver of Medical Panel Review was sent to the Director of the University of Nebraska Medical Center and the Director of the Department of Insurance.

Abram Sollman

Inmate Name Abram Sollman
Inmate Number 211168
Box 22500
Lincoln NE, 68542-0500
Notice: This correspondence was mailed from the Nebraska State Penitentiary. It's contents are uncensored.

Legal Mail




Clerk of the Court
U.S. District Court
111 South 18th Plaza, Suite 1152
Omaha, NE 68102

RECEIVED
APR 29 2021
CLERK
U.S. DISTRICT COURT

OK